Hoffman, D. J.
It cannot he disputed that the petitioner to establish his right to he paid out of the surplus proceeds remaining in the registry, must show not merely that his co-owner is indebted to him, but that he had a lien upon the vessel for the debt.
This court cannot, in an admiralty suit, exercise the functions of a court of bankruptcy and distribute the surplus proceeds of a vessel sold under its decree among the general creditors of the owner. But the privilege, or jus in re, which the court in such eases will recognize and enforce need not necessarily be a maritime lien, or a lien on which an original suit in the admiralty could be brought. Thus a mortgagee, though his rights could not be enforced by a libel to foreclose, may, nevertheless, claim and receive as against the mortgagor the remnants and surplus in the registry, and apply them in satisfaction of his mortgage. In like manner the lien of an attaching creditor will he respected after the satisfaction of *825 maritime liens entitled to priority. See The Mary Anne, Ware, 104. If, therefore, the petitioner can show that he had a lien on the vessel for the amount of his advances at the time of her seizure, he will he entitled as against the owner to payment out of the proceeds. It is unnecessary in this case to discuss the vexed question whether a part owner of a ship has a specific lien on the share of his co-owner for his portion of the expenses of fitting out and running her. Lord Hardwicke was of opinion that he has, and he decreed in favor of the part owners against the share of a co-owner who had died without contributing his share of the expenses. With respect to this ruling Judge Story observes: “After all, there would seem to be intrinsic equity in the doctrine maintained by Lord Hardwicke, and, as liens may arise either from express or implied agreements, it is but a reasonable presumption (in the absence of all controlling circumstances) that part owners do not intend to rely solely upon the personal responsibility of each other to reimburse themselves for expenses and charges incurred upon the common property for the common benefit, but that there is a mutual understanding that they shall possess a lien in rem.” Story on Part. § 444.
In England the law appears to be settled adversely to the existence of the lien, (Ex parte Harrison, 2 Rose, 76; Ex parte Young, Id. 78, note;) but in America much diversity of opinion has prevailed. Mr. I. Curtis thinks that the decisions may in some degree be reconciled by attending to the distinction between cases where the owners occupy towards each other the relation of mere tenants in common of a chattel, and those where they are partners in a common adventure. In the latter case the lien unquestionably exists, but if there-be not the relation, the learned judge was of opinion that there was no lien. The Larch, 2 Curtis, 434. If, as held by Mr. I. Curtis, the lien be confined to cases of actual partnership between the part owners, there would be much ground to contend that, under the circumstances of the present case, the parties bore that relation to each other, or, at least, such *826 a relation of quasi partnership as would be sufficient to give rise to a lien. But this question it is not necessary now to decide, nor the further question whether if the lien exists it could be enforced by an original proceeding in the admiralty. See The Larch, ubi supra; The Young Mechanic, 2 Curtis, 404; Kellum v. Emerson, Id. 79. The vessel in question in this case was a small craft owned in this state and employed exclusively in the navigation of its interior waters. Section 3055 of the California Civil Code provides that “the master of a ship has a general lien, independent of possession, upon the ship and freightage for advances necessarily made, or liabilities necessarily incurred, by him for the benefit of the ship, but has no lien for his wages. ”
Whether the lien thus created is a strictly maritime lien, and capable of being enforced by a direct proceeding in rein in the admiralty, is not material now to inquire or decide. The present proceeding is against surplus proceeds in the registry. The duty of ascertaining to whom they belong devolves upon the court, as a necessary incident to the jurisdiction it incontestably possessed, to decree a sale to satisfy maritime liens, and the objection that the admiralty has no jurisdiction over matters of account, whatever be its force where an original suit is brought to enforce a lien not strictly maritime, and, therefore, “not peculiarly within the jurisdiction of a court of admiralty,” has no application to a case like the present, where the court is obliged to determine to which of two opposing claimants a fund in its possession should be paid.
My opinion is that the petitioner, as master of the ship had, tinder the state law, a lien upon her for his advances incurred for her benefit; that that lien attaches to her surplus proceeds remaining in the registry, and that, as between him and the representative of the other part owner, he is entitled to be paid out of the proceeds.
It appears by the commissioner’s report that, on accounting and settlement between the petitioner and his co-owner, there was found to be due him $371.88.
*827 From this, by consent of parties, six dollars is to be deducted, leaving due the petitioner, - - $365 88'
He "also, after the death of the other part owner, paid for bills and liabilities previously incurred for the benefit of the ship, $288 69
Less his share, one-fourth, - - 72 17
Balance due, - $216 52
$582 40
Less Captain Zephyr’s share of net earnings on ten trips, ------ 183 95
Balance for advance^ - - - $398 45
Some question was made as to the terms on which the trip -of December 9, 1879, was made by the master. My opinion is that it should be deemed to have been made under the •same agreement as that on which the previous trips had been made, and, if so, the petitioner has no claim against the fund; on the contrary, he is liable to his co-owner for three-fourths of $10.50 — the net profits of the voyage — $7.87.
If, as he claims, the trip was made by him on wages, it is sufficient to say that for any balance of wages he can assert no claim upon the fund to be distributed, for he had no lien on the vessel.
There should also be deducted from the petitioner’s claim the sum of two dollars, being amount paid for board bill of Captain Zephyr. This charge, however just, cannot be allowed as a lien on the vessel or her proceeds. The accounting will, therefore, stand as follows:
Due on accounting and settlement, $371 88
Less as above, - - - - 6 00
- $365. 88
Due for advances, - - • $288 69
Less Captain’s pro rata share, - 72 17
—-- 216 52
$582 40
*828 Amount brought forward, - $582 40
Less Zephyr’s share of profits of 10 trips, - ' - - - - $183 95
Less two dollars as above, • » 2 00
Less $7.87 as above, - » - 7 87
-■ $193 82
Due petitioner, » » = . $38S58 which he is entitled to receive out of the fund in the registry.
The remainder, of the fund is to be divided between him and the representative of the other part owner in the proportion of their respective interests in the vessel, via: Petitioner, one-fourth; Captain Zephyr, three-fourths.
An order to this effect will be entered.