### THE AMERICAN.
### THE IMPERATOR.
Nos. 238, 246.

District Court, D. Massachusetts.
Feb. 24, 1930.

In case No. 238:

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelant.

John J. Cunningham, J. M. Marshall, Lincoln S. Simonds, MacInnis & Wonson, Frederick H. Tarr, and R. Chandler Davis, all of Gloucester, Mass., G. Philip Wardner, Blodgett, Jones, Burnham & Bingham, C. J. Halligan, Jr., and Thompson, Spring & Mears, all of Boston, Mass., for intervening petitioners.

In case No. 246:

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelant.

Frederick H. Tarr, Lincoln S. Simonds, J. M. Marshall, MacInnis & Wonson, and R. Chandler Davis, all of Gloucester, Mass., G. Philip Wardner, of Boston, Mass., and Safety Fumigating Co. pro se, for intervening petitioner.

BREWSTER, District Judge.

The above-entitled matters are before the court on the intervening petition of one John P. Babine, to which petition the libelants and other intervening petitioners have filed exceptions. In his petition, Babine asks only to be allowed to protect his interest in any surplus remaining in the registry after satisfying maritime and other liens having priority.

The facts are these: While on board the schooner American, Babine was injured, and, on August 27, 1929, he brought suit in this court against the owner to recover damages resulting from the injuries. On this writ the schooner American and the schooner Imperator were attached as the property of the owner on August 28, and September 17, respectively, and the schooners were in the custody of the marshal under said attachment on October 14, 1929, when libels were filed against the schooner American by the Steele & Abbott Company and on November 21, 1929, when a libel was filed against the schooner Imperator by Parkhurst Marine Railroad Company. After the filing of the libels, the vessels were held in the custody of the marshal, under monitions and warrants issuing out of this court in the admiralty proceedings, until they were sold by the marshal under the order of court. The proceeds have been paid into the registry. Babine's action at law is still pending.

It is the contention of the libelant that the attachments were dissolved by the proceedings begun on the admiralty side of the court, and that Babine has no interest in the res which entitled him to intervene in the proceedings. The sole question presented is whether, by virtue of the attachment which he had upon the vessels at the time they were taken over in the admiralty proceedings, Babine has such an interest in the surplus as will entitle him to intervene under Admiralty Rule 42 (28 USCA § 723).

It has been said that the power of the court to dispose of proceeds of a vessel may extend to the payment of nonmaritime liens after maritime liens have been satisfied, but does not extend to claims in personam, or general creditors, except so far as to pay over any surplus to the owner. The Ada (C. C. A.) 250 F. 194, 195. "Any specific vested lien upon the res, or upon the fund derived from it, is enforceable in admiralty against remnants and surplus, whether such interest was a maritime lien or not." 1 Benedict on Adm., § 453, page 540.

▪ I agree that Babine as a creditor, or even as a judgment creditor without a lien,

would have no such interest as would entitle him to intervene, but the laws of Massachusetts provide that real and personal property of a defendant, not exempt by law, may be attached upon the original writ and held as security to satisfy a judgment that may be recovered thereon. Mass. Gen. Laws, c. 223, § 42. That such attachment creates a statutory lien upon the property attached is well settled in the state court. Grosvenor v. Gold, 9 Mass. 209; Atlas Bank v. Nahant Bank, 23 Pick. (Mass.) 480; Arnold v. Brown, 24 Pick. (Mass.) 89, 35 Am. Dec. 296.

I see no reason why this lien should not be transferred to the proceeds resulting from the sales and should be respected by this court, after satisfying the maritime liens entitled to priority. Topfer v. Schooner Mary Zephyr (D. C.) 2 F. 824; The Mary Anne, Fed. Cas. No. 9195; The Velocity, Fed. Cas. No. 16,911.

After considering the briefs of the proctor for the libelant and the proctor for the intervening petitioner, I have reached the conclusion that Babine, as a plaintiff holding a valid attachment upon the vessels at the time they were taken over by the marshal under the monitions in the admiralty proceeding, had a statutory lien upon the vessels, and, when they were sold, this lien was transferred to the proceeds. This lien, of course, is subject to maritime liens or preexisting lawful incumbrances upon the vessels. Although this lien may be dissolved by adverse termination of his litigation on the law side of the court, until it is so dissolved he is entitled to participate in the admiralty proceeding to the extent of protecting his interest in the surplus, and to that end he may, with propriety, question the extent and validity of the maritime liens of the libelant and other intervening petitioners.

There would seem to be no justification, legal or equitable, for the payment to the owners of whatever surplus remains after satisfying the maritime liens without due consideration of the rights of a creditor who had a valid attachment upon the vessels at the time they were libeled in this court. I find no principle of admiralty law that requires such a result. The exceptions to petition to intervene are overruled.

Attached to Babine's intervening petition are certain interrogatories addressed to another intervening petitioner, namely, the Independent Fisheries Company. Exceptions to these interrogatories have been filed attacking the right of Babine to file such interrogatories. It is apparent that the purpose of the interrogatories is to lay the foundation for attacking the validity of the maritime lien of the Independent Fisheries Company. As a general proposition, I would rule that Babine was quite within his rights in propounding these interrogatories. Certain of the interrogatories, however, seem to require the Independent Fisheries Company to give information regarding the Fred L. Davis Company. These would seem to me to be improper and need not be answered. I refer to interrogatories Nos. 6, 7, 8, 13, 17, 18, 19, 20, 23, 24, 25, 26, 27, 28. The remaining interrogatories are proper and should be answered, and, as to these, the exceptions are overruled.