## WELCH v. THE CLIFTON MFG. CO.

1. EVIDENCE as to purchases of cotton for defendant not hearsay, but relevant under issue of agency.
2. IBID.—PRINCIPAL AND AGENT—AGENCY.—General agency may be shown by acts of agent permitted from year to year, which are inconsistent with a special or limited agency.
3. IBID.—LETTERS complained of as inadmissible, held competent under the issues in this case.
4. IBID.—Any opinion of defendant as to what would have been done if he had known certain facts, is incompetent under issues here.
5. IBID.—Testimony on an immaterial matter cannot affect issues in a cause.

6. IBID.—WITNESS—CROSS-EXAMINATION.—Party refusing to pay one check sued on, may on cross-examination be asked why he refused to pay others, and as to the drawing of them.

7. IBID.—PRINCIPAL AND AGENT.—Testimony as to agent of defendant using principal's money in speculating in cotton, is not relevant to the issues here.

8. CHARGE—IBID.—Illustration used in charge, in connection with other portions of charge as to agency, fully covers the law thereof.

9. IBID.—A proposition of law not applicable to any facts in the case, illustrated by a hypothetical statement of facts, is not .a charge on the facts.

10. EVIDENCE—PRINCIPAL AND AGENT.—When the limitations of an agent's authority is to be derived from his dealings, the limitations are such as a person of ordinary character and prudence in business would have been warranted in believing to exist.

11. PRINCIPAL AND AGENT.—It seems that the retention by the principal of the cotton bought by the agent after knowledge of the facts, amounts to a ratification of the agent's acts.

12. CHARGE in which jury has been carefully instructed can not be destroyed by a little looseness of expression, from which, in connection with main charge, jury could not be misled.

13. CHARGE as to degree of proof in civil and criminal cases held not to be injurious to appellant.


Before BENET, J., Spartanburg, April, 1898.    Affirmed.


Action by James S. Welch against The Clifton Manufacturing Company.    From judgment for plaintiff, defendant appeals.

*Messrs. Simpson & Bomar,* for appellant, cite: *Evidence as. to other post-dated checks improper:* 24 S. S., 366. *Plaintiff is estopped from maintaining this action by having received a post-dated check:* 6 N. W. R., 131.    *Error to charge a principle of law as applicable when it is not: Thomson* v. *Sexton,* 15 S. C.    *Not necessary to request a charge upon an issue fairly raised:* 52 S. C., 539.

*Messrs. Munro & Munro* and *Hydrick & Wilson,* contra. The latter cite: *Agency and its scope will be implied from facts and circumstances, and may be proved by them, and by*

*the conduct of the parties:* 44 Ind., 291; 36 Kan., 552; 13 Pac. R., 827; 48 S. C., 430; 49 S. C., 345; 10 Wall., 604; 12 Wall., 683; 1 Hill, 502; 1 Bing., 22. *Appellant cannot object to testimony for which it opened the door:* 51 S. C., 222. *Exception referring simply to other exceptions or requests will not be considered:* 46 S. C., 373. *The party making the fraud or negligence possible must suffer rather than the innocent one:* 10 Rich., 337; 47 S. C., 139.

July 20, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. This was an action began on the 15th day of February, 1897. The leading characteristics and principles of law are the same in the case at bar with those involved by the action of Bank of Union *v*. The Clifton Manufacturing Company, which latter we have just decided, and we might rely upon that decision as authority for sustaining the judgment here; but probably the exceptions being different, it may be as well for us to pass upon them anew, with even the risk of repetition. The history of the case may be thus stated: In December, 1896, James S. Welch, who resided outside the town of Union, near Carlisle, was approached by Theodore S. Fitzsimons, who was the agent of the defendant, for the purpose of buying thirty-five bales of cotton he owned. Welch told the agent he must have seven cents per pound for his cotton, and that he would hold it for that figure until February, 1897. To this Fitzsimons replied that he would take it at that figure, payable on 1st February, 1897. Welch then went to his plantation, had the cotton hauled to Carlisle, weighed, and saw that it was shipped to the defendant. Taking the railroad receipt with him, he went to Union, as Mr. Fitzsimons had requested him to do, and reached there on Christmas day. Mr. Fitzsimons gave him a check for $1,161.86 on the Merchants and Planters National Bank of Union, S. C., which was in these words and figures: "Union, S. C., February 1, 1897. Merchants and Planters National Bank of Union, S.

C. Pay to J. B. Welch or order, eleven hundred and sixty-one and 86-100 dollars. Clifton Mfg. Co., Theodore S. Fitzsimons." The railroad receipt for the cotton and the cotton itself was received by the defendant. When the foregoing check was given to the plaintiff, Mr. Fitzsimons requested him to go to the bank officers and inquire if the check would be paid when due. He was assured by the bank officers that the check was all right, and would be paid. After the middle of January, 1897, the defendant gave the bank notice not to pay any more checks drawn by Fitzsimons. So when the plaintiff presented his check for payment on 1st February, 1897, its payment was declined by the bank. The plaintiff then made demand upon the defendant to pay the check, and when this was refused, he demanded that the defendant return to him his thirty-five bales of cotton. This last was also refused. The plaintiff then began this suit. In its answer the defendant pleads: That during the cotton season of the year 1896-1897, Theodore S. Fitzsimons was its agent in the county of Union, with special and limited powers, to wit: with authority to buy cotton for cash and have the same shipped to it at Clifton, S. C. But the said company denies that the said Fitzsimons, as such agent, had any power or authority other than that heretofore stated. It admits that it has heard that the plaintiff, about 25th December, 1896, delivered to Theo. S. Fitzsimons thirty-five bales of cotton, weighing 16,598 pounds, and that he received in exchange therefor the paper of which a copy is set up in the complaint, but defendant alleges that Fitzsimons had no authority or right to issue such a paper check, or buy any cotton for it on credit, and such paper is without authority and is not binding on defendant; admits that it has heard that the bank at Union, S. C., has refused to pay the check. Does not admit that the identical bales of cotton were shipped to it or are now in its possession; says the reason it does not pay plaintiff is because it does not owe him the sum sued for, or any other sum. Also says, if it be true that the plaintiff delivered cotton to Fitzsimons and received the

paper set out in the complaint, still the defendant does not owe and should not be required to pay to the plaintiff the sum demanded, because it has no knowledge or intimation of any such unusual and irregular course of dealing as set out by the plaintiff; that Fitzsimons, in attempting to bind defendant, was acting outside his agency, and, therefore, in this respect did not act as its agent, &c. A great deal of testimony was taken when the action came on for trial before Judge Benet and a jury. Questions arose as to the competency of some of this testimony, and when the Judge charged the jury, exceptions were taken to his charge. The jury found a verdict for the full amount in favor of the plaintiff. From the judgment entered thereon appeal is now taken. We will pass upon these exceptions in their order. The appellant contends that the Circuit Judge erred:

"1st. In allowing plaintiff to testify as to purchases of cotton made by Fitzsimons through A. C. Liles at Carlisle, and the shipment of such cotton to The Clifton Company, when it appeared that the witness' knowledge of these matters was hearsay, and the transactions themselves had no relation to the questions at issue in this cause, and the testimony was, therefore, irrelevant and incompetent, as violating the rule of law, which forbids the introduction of hearsay evidence, and requires that the evidence introduced in any cause must correspond with the allegations, and be confined to the point in issue." The testimony on the examination of the plaintiff as a witness, as shown by the "Case," is direct and positive that it was of his own knowledge that he testified; he knew that Fitzsimons, through Liles at Carlisle, in 1896, bought cotton at Carlisle, and that some of it was shipped to the defendant. That cotton was bought for Fitzsimons at Herbert's and at Shelton's. Such testimony was not hearsay. That the testimony was relevant to the issues, will appear when it is remembered that in its answer the defendant denied general agency, but alleged a special, limited agency in the person of Fitzsimons in Union County as defendant's cotton buyer. This testi-

mony has some relevancy to that issue so tendered.      Exception overruled.

"2d. In allowing the same witness to testify as to other cotton bought at Herbert's and Shelton's, when such testimony was objectionable for the same reasons as given in exception 1st." This exception is overruled for the same reasons given in overruling the first exception.

"3d. In allowing the plaintiff to testify that he had previously sold cotton to Fitzsimons, and waited for his money, without first requiring proof that if such transactions were had with Fitzsimons, they were authorized or ratified by the defendant company. Such testimony relating to a collateral transaction prejudicial to the defendant, and being entirely incompetent and in violation of the rules of law, which forbids the admission of testimony of that character, and requires all testimony to correspond with the allegations of the complaint, and to be confined to the points in issue in the cause." It is necessary to show how an agent undertook publicly to discharge his agency. Various circumstances enter in to make up a general agency. If an agent is allowed from year to year to exercise duties for his principal which are beyond a limited special agency, it is proper that the testimony shall show this. Certainly, in the case at bar, many various and important acts by this agent are brought out in the testimony. This is in the same direction with other circumstances, and is competent. This exception is overruled.

"4th. In allowing plaintiff to testify that T. W. Traylor and R. W. Harris had sold cotton to Fitzsimons for Clifton Company, and waited for their money, when such testimony was prejudicial to the defendant, related to matters between other parties, was not relevant to the issues in this case, was not proven to have been known to or ratified by the defendant, and was based in part, if not entirely, on information given the witness by others, and was, therefore, incompetent for the reasons stated, and not admissible under the rules of law regulating the introduction of testimony, as given in

foregoing exceptions herein." We think this testimony competent under this view of the case. The defendant was denying general agency and asserting a limited special agency in Fitzsimons. There was no deed or other paper which evidenced the character of this agency. Of necessity, therefore, resort must be had to the course of dealings between Fitzsimons on the one side and the defendant or his principal on the other, in order to determine what *status* in law these reciprocal duties established. The issue is beyond that of what the plaintiff knew, or did not know, of these said dealings, and this defendant by its pleadings has tendered this enlarged issue, when it there declared in effect that Fitzsimons as its agent was limited to spot cotton for cash paid at time of purchase. If the plaintiff can show that the defendant did not so hold its agent in his work, it is competent to do so, and these two matters throw light upon the issue. The exception is overruled.

"5th. In allowing the plaintiff to testify against the objection of the defendant as to another post-dated check, alleged to have been given by Fitzsimons to one Traylor, when such testimony was secondary evidence, in that it was based on the witness' inspection of the check, which was not produced, and was irrelevant as being a transaction between persons not parties to this cause. Appellant insists that this ruling was prejudicial to defendant, and was error as being in violation of the rules of law, which require the production of written papers as the best evidence of their contents, and further forbid the introduction of any irrelevant or collateral maters not relating to the issues involved in the action, and that the error was not cured by the subsequent order of the Judge, at the conclusion of the testimony, striking the evidence out, especially when such order was not accompanied with any caution to the jury that they must not be influenced by the testimony so stricken out." We do not see, under the line of thought suggested in our disposition of the 4th ground of appeal, that this testimony was objectionable, but greater freedom of discussion will obtain in our re-

marks upon the 6th exception.    This exception is overruled.

"6th.  In allowing the following letters, written by T. S. Fitzsimons to The Clifton Manufacturing Company during the years from 1888 to 1896, to be introduced against the objection of defendant, when such letters were prejudicial to the defendant, and contained many matters that had no relation whatsoever to the issues involved in this cause, and certain matters, which, in addition to being irrelevant and incompetent, were calculated to influence the jury against defendant.    All of said letters being incompetent, under the rules of law which forbid the introduction of any testimony, oral or written, which is not responsive to the pleadings and not confined to the points in issue in the cause:  (a)  Letters introduced and marked 'A' 1 to 'A' 59, in which overdrafts at Merchants and Planters Bank were mentioned.    (b) Letters marked exhibit 'A' 5, in which reference is made to agreement as to how much cotton each company buying at Union shall buy.    (c)  All letters referring to overdrafts at Merchants and Planters Bank.    (d)  All letters referring to purchases of cotton from Farr & Thompson.    (e)  All letters referring to purchases through sub-agents and transactions with them."    This is an important link in the history of the defendant's efforts to buy cotton in Union through its agent, Theodore S. Fitzsimons, and it is quite apparent that the defendant realizes the light which the letters in question will throw upon this matter.    During the more than eight years agency of Fitzsimons for the defendant at Union, it is in evidence that such agent addressed almost daily letters of advice as to his operations for his principal to Mr. A. H. Twichell, who represented such principal.    The claim of defendant in its answer is that its agent was to buy spot cotton for spot cash.    These letters show that this agent, in these letters to Mr. Twichell, repeatedly, many, many times, notified his principal that the account at the bank at Union was overdrawn for days at a time for many thousands of dollars; that this agent, in the year 1890, wrote his principal that the president of the

bank at Union (Merchants and Planters National Bank), we will mean this bank hereafter when we say "the bank," had told him to tell said Twichell *that overdrafts could not be allowed while money squeeze continued.* These letters further disclose that at one time Mr. Fitzsimons wrote to Mr. Twichell, as treasurer of defendant mill, to send the bank the amount of his (Fitzsimons') salary to cover his overdrafts. Why would Fitzsimons ask the rich corporation to use his salary as cotton buyer to cover the overdrafts in the account of defendant with the bank, if he himself had not used for his own purposes some of his principal's money? It was perfectly competent to introduce all the letters, in enumeration, in order to make plain the whole truth connected with Mr. Fitzsimons' agency for the defendant mills. Thus, when the defendant complains lustily of the conduct of the plaintiff working an injury to it, the plaintiff can by letters in the possession of the defendant, from its trusted agent, Fitzsimons, show that for years the defendant had known that its agent had used some of its money for his own purposes, and that the defendant itself sent the money to the bank to cover such an irregularity, and yet the defendant continued the agency. Further, that these letters from Fitzsimons disclosed the fact that he had established subagents at Jonesville, Carlisle, Santuc, &c.; that he rented warehouses for the defendant of his own motion; that he ratified purchases of cotton by his subagents at his own will and pleasure. With these disclosures in plain view, we hold the admission of the leters perfectly proper. Let this exception be overruled.

"7th. In allowing the witness, McWhirter, to the prejudice of the defendant, to testify that Fitzsimons had given to him in the name of The Clifton Manufacturing Company a post-dated check for cotton, and that such check had been paid in February, 1897, such transaction being between other parties, and there being no evidence whatsoever that it was known to and induced action by the plaintiff, or was known to the defendant, the ruling

allowing such testimony being in violation of the rules of law, forbidding the introduction of collateral matters which are not relevant to the issues in the cause, and which require that a plaintiff shall be confined in his testimony to the issues pending between himself and the defendant." For the reasons given in the disposition of the 5th exception, we overrule the 7th.

"8th. In holding and ruling that the plaintiff was entitled to introduce any evidence which tended in the least degree to show a general agency; inasmuch as a general agency had been alleged in the complaint, and that the burden of showing that Fitzsimons' agency was not a general but a limited one, was on the defendant, and when the facts were that no general agency was alleged in the complaint."

"9th. In allowing in evidence against the objection of defendant and to its prejudice the books of the Merchants and Planters Bank, in which defendant's account was kept from 1888 to December 25, 1896, and allowing the witness, Arthur, to testify therefrom as to overdrafts made by Fitzsimons at said bank, when such books related to transactions in which the plaintiff was in no way interested, and of which it was not shown that he had any knowledge; such testimony being, therefore, irrelevant and incompetent, because it was outside of and not responsive to the pleadings, and related to collateral matters. 10th. In allowing in evidence to the prejudice of the defendant the books and the testimony referred to in the preceding exception, especially with reference to transactions in the fall of 1896, where it was not only not shown that the overdrafts thus proven were known to and ratified by defendant, but on the contrary that no such overdrafts were known to defendant, and that many of them were caused by checks drawn on said account without authority and for illegal purposes, we submit that the ruling as to that testimony also violated the rules of law alleged to have been violated in exception 9th. 11th. In allowing the witness, Arthur, to testify against defendant's objection and to its prejudice as to the transaction between the bank and R. W.

37—55

Harris involving a post-dated check for $2,229, and in allowing such check in evidence when such transaction had no relation to the issues here, and, therefore, the testimony relating to it was irrelevant and incompetent, in that it did not relate and was not confined to the issues raised in this action." We will dispose of the 8th, 9th, 10th, and 11th exceptions together—only saying as to the 8th, that it matters not whether the complaint stated a general agency in Mr. Fitzsimons; it was an issue in this cause. What defense could there be in the trial of that issue, tendered by the defendant of "spot cotton for spot cash," than testimony offered to refute such defense; therefore, that testimony should be received. And what better evidence can there be than books which show the account for all moneys paid for cotton by defendant's agent, and whether it was money on deposit to the credit of defendant or whether it was the money of the bank temporarily loaned to the defendant? Whenever there is an overdraft of an account in bank, the customer, whose account is overdrawn, becomes a debtor to the bank for such overdraft. When the defendant through its agent purchased cotton and paid for it by overdrafts, while it paid cash to the holder of the cotton, it was a debtor to the bank for the money. If the bank saw, in course of dealings covering nearly nine years, that every overdraft was promptly met, it had the right to assume that the conduct of Fitzsimons in creating overdrafts met with the approval of his principal, and justified the bank in continuing to do so; and, therefore, when plaintiff took a check on the bank post-dated for cotton sold and delivered *bona fide,* on the trial of the issues of agency, he had the right to all testimony covered by the books of the bank, and also the testimony of Mr. Arthur in this connection becomes competent. Exceptions overruled.

The twelfth exception was abandoned at the hearing. "13th. In allowing the witness, W. D. Arthur, to testify as to various cotton purchases by him for Fitzsimons in fall and winter of 1896, when plaintiff was in no way connected

Rep.] April Term, 1899.

with it, and was not shown to have had knowledge of such transactions, and when the evidence showed that defendant had not ratified but distinctly disavowed each transaction, all of such testimony being prejudicial to defendant, and the ruling allowing its introduction being in violation of the rules of law, requiring testimony to be responsive and confined to the issues in the action."

"14th. In not allowing the witness, Twichell, to testify what course he would have adopted as to the giving of post-dated checks, if it had been brought to his knowledge that Fitzsimons was giving such checks, when it was entirely competent for such witness to testify what he would have done, and thus produce evidence in support of the defense set up that plaintiff's conduct has induced action by defendant to its prejudice, and that plaintiff was, therefore, estopped." The thirteenth exception is overruled upon the grounds just stated in disposing of 9, 10, and 11. As to the 14th exception, we cannot see how any opinion of Mr. Twichell, as treasurer of the defendant mill, as to what steps he would have taken, if he had known his agent, Fitzsimons, was giving post-dated checks, can have in any proper solution of the issues of this action. It was not responsive to any issue. This exception is overruled.

"15th. In requiring the witness, Twichell, to testify as to certain cotton transactions between Fitzsimons and J. T. Douglass, involving forty-four bales of cotton, when such transaction was in no way related to the issues in this case, was between other parties, was not shown to have been known to or ratified by defendant company—such testimony being prejudicial to the defendant, being irrelevant to the issues in this action, and the ruling admitting it being in violation of the rules of law, which forbids the introduction of testimony as to collateral matters, and requiring all testimony to be responsive and confined to the pleadings in the cause." It seems that J. T. Douglass had forty-four bales of cotton which Mr. Fitzsimons was

anxious to buy, but Mr. Douglass was not willing to sell his
cotton at the price it was then bringing; Mr. Fitzsimons
then executed a paper whereby it virtually stipulated that
while the cotton was to go into the possession of the defend-
ant, it was not to be as the owner, but simply for conveni-
ence (we suppose, of seller and buyer when the time for a
sale was reached).   Meanwhile knowledge of Mr. Fitzsim-
ons' misfortune became general.   Mr. Douglass demanded
his cotton.   After a while his demand was conceded to be
proper by defendant, but they (the mills) wished to buy and
did buy the cotton.   We do not know that the testimony was
relevant, but it relates to so immaterial a matter, it could not
possibly affect any issue, whether admitted or rejected.
The exception is overruled.   Our opinion is in law that as
long as the defendant retained the plaintiff's thirty-five bales
of cotton after a full knowledge of the manner it got posses-
sion of them, all other issues were of little moment.

"16th. In requiring the witness, Twichell, to testify what
checks given by Fitzsimons the defendant refused to pay,
and to answer other questions relating to the execution and
alleged consideration of said checks, such testimony being
irrelevant and incompetent for the reason for which
it is alleged that the testimony referred to in excep-
tion 15th was incompetent."   When Mr. A. H.
Twichell, who is a most worthy man, was placed on the wit-
ness stand by the defendant as its witness, the plaintiff ac-
quired the right of a pretty full cross-examination of such
witness.   He had denied plaintiff his right to the payment of
his check for over $1,100, and he had refused him the deliv-
ery to him of the thirty-five bales of his cotton received by
said defendant; it was, therefore, a legitimate question
whether he had refused to pay other checks and what?   Let
this exception be overruled.

"17th. In refusing to allow in evidence the statement of
the witness, Penny, as to amounts and dates of shipments of
money to New York by Fitzsimons for illegal purposes,
when such testimony was clearly relevant and competent,

as supporting the defense set up, that by his unusual course of dealing with Fitzsimons, plaintiff had made it possible for defendant's funds to be misappropriated, and that plaintiff was estopped by his conduct from recovering in this action, and the ruling excluding it violated the rules of law which allow the introduction of testimony which is so responsive to the pleadings." All this witness could have told would be that Mr. Fitzsimons quietly and almost secretly shipped cash, from time to time, to parties in New York from Jonesville, S. C. There was no earthly connection existing, suggested, or conceived of, between Penny and the plaintiff, or Fitzsimons and the plaintiff, or all three of them, as to any such money. The shipments were in fact made before plaintiff sold the defendant his cotton. Let the exception be overruled.

"18th. In refusing to allow in evidence the statement of the witness, Nicholson, as to drafts paid by Fitzsimons through his bank, when such testimony was clearly relevant and competent for the same reasons stated in exception 17th." For the same reasons given in overruling exception 17, we overrule this exception.

"19th. In refusing to allow the introduction of the testimony referred to in exceptions 17th and 18th, because it was not first shown that such transactions were known to plaintiff, when he had previously ruled that other transactions of Fitzsimons, with which plaintiff had no connection, should be admitted in evidence, and without first requiring that knowledge thereof by defendant should be shown." This testimony was irrelevant to the issue; its only tendency was to show that defendant had been unfortunate in its selection of an agent. This neither plaintiff nor defendant denied. The less said of it, possibly, the better. This exception is overruled.

"20th. In allowing the witness, Law, to testify as to certain transactions between Tucapaw Mills, Arkwright Mills, and Fingerville Manufacturing Company, and certain of their customers, respectively, relating to the storing

of cotton and allowing cotton certificates issued by said mills to be introduced in evidence, when such testimony had no reference to the issues in this action, but to transactions between parties entirely different from those before this Court, and was, therefore, incompetent—the ruling allowing this testimony being in conflict with the rules of law which require all testimony to relate to and to be confined to the issues in the cause pending." The only relevancy of this testimony was to show that cotton was sometimes not sold for cash. We cannot regard storing cotton in a warehouse, giving a certificate for such cotton so stored, and the use of such certificate in obtaining money, as any sale of cotton on credit. Still the testimony had no possible effect on the issues on trial here. The exception is overruled. The Circuit Judge in his charge held that all this testimony was irrelevant.

"21st. In allowing the witness, McCravy, to testify that he had delivered cotton to the Whitney Mills, on an agreement that it was to be settled for afterwards, the ruling admitting this testimony being erroneous for the reasons stated in exception 20. 22d. In allowing witness, Duncan, to testify as to certain contracts the Union Warehouse Company had made with its customers as to storing cotton, and allowing one of these written contracts in evidence." For the same reasons set forth in disposing of the 19th and 20th exceptions, we overrule exceptions 21st and 22d.

"23d. In not holding that all the testimony offered as to transactions between other mills and their customers, and warehouse companies and their customers, referred to in the exceptions immediately pending, had no relation to the issues in this case, and should not be allowed in evidence to influence the minds of the jury, and in not excluding such testimony as incompetent, the ruling admitting this testimony being erroneous for the reasons stated in exception 20th." We cannot view this testimony as relevant to the issues here being tried; but, as before said, such testimony was perfectly harmless; it could not possibly prejudice the defendant with

the jury.   It is almost impossible in long protracted trials that everything should be perfectly free from exception; when errors are perfectly harmless, we will not sustain them to the extent of making them grounds for a new trial.    Let this exception be overruled.

"24th.  In charging the jury as follows : 'Suppose another man comes to you and says : "I represent the firm of Brown & Jones, dealers in stock, and I am buying stock for them as their agent;" and he desires to purchase any stock that you may have; again, your first inquiry would be, is he the agent of Brown & Jones?   If you are satisfied as to the fact of the agency, the next inquiry is, what is the limit of his agency? what is he authorized to do?   He says he is authorized to purchase stock for the firm.   You may ascertain that in more ways than one; or it may be possible for you to communicate with Brown & Jones and ascertain from them exactly what the power conferred upon that agent amounts to; or it may be possible for you to ascertain from the conduct of Brown & Jones towards this agent, and the transactions which the agent is concerned in, and the notoriety of the fact that he has been representing himself as an agent of Brown & Jones, and has been purchasing stock until it may well be presumed that he has been acting as the agent of Brown & Jones.   In such case you would not be required to apply at headquarters, Brown & Jones, for information.   Such an agency may be ascertained without special inquiry at headquarters—I mean, without special inquiry of the principal, if the public are satisfied that the principal has allowed the agent to act as if he were their agent, and has held him out to the world as their agent.'   The error in such charge being that the jury was instructed that one dealing with such an agent need not inquire of the principal, but might rely upon appearances, if the agent was acting notoriously for his alleged principal until it could be presumed that he was so clothed with authority; and again, that the obligation to inquire and know the fact and extent of the agency was removed whenever the public were satisfied that

the alleged principal had held him out as agent. We submit, the law is that one dealing with another must at his peril be bound by the facts, and not by what the public are satisfied of, or what appears to, or is presumed by them as to the facts and extent of the agency assumed." As announced by the Circuit Judge, it was his purpose to give the jury an illustration of the way the idea of agency got possession of the mind of people who come in contact with such agency. This is but an extract from the charge to the jury. The Circuit Judge charged the jury fully on the law of agency, adopting all the requests to charge of the defendant. Let the exception be overruled.

"25th. In giving to the jury, in the illustration of one buying stock, an erroneous idea of the distinction between a general and a special or limited agency, to the prejudice of the defendant, in that the jury were informed that the agency alleged and relied on by defendant was a limited one, and the power of a general agent, as general agency was defined, was much broader." The general charge of the Judge, as we before remarked, was full and clear, adopting in a large measure the views of the defendant in its request to charge, which were all accepted by him. We cannot see that the "Brown & Jones" illustration could have any effect injurious to the defendant, especially in view of what was stated and repeated in the other portions of the charge on the subject of agency. Let the exception be overruled.

"26th. In several times charging the jury, both in his general charge and in limiting and modifying requests to charge, that one dealing with an agent was not bound by secret instructions and limitations on the agent's power, when such charge had no relevancy to the case as made, because there was no evidence showing, or tending to show, any such secret instruction. The portion of the charge here complained of was erroneous in law and prejudicial to defendant, in that it did not relate to the case made by the testimony, but had a tendency to lead the jury to believe that in the opinion of the presiding Judge the case

was one where such secret instructions had been given, and being thus a charge on the facts." We cannot see how this language used by the Circuit Judge could possibly prejudice the defendant. It was sound law, but had no application to the cause on trial. If there were no facts proved on the trial relating to secret instructions, what the Judge said could not be said to be a charge on the facts, in the light of our Constitution.

"27th. In charging the plaintiff's fourth request, the error here is in making the test of the principal's liability for his agent's act depend on what conclusions an ordinarily prudent person would come to as to the agent's authority in one particular from his admitted authority in other particulars. An ordinarily prudent person might think that one having authority to overdraw his principal's bank account, might also pledge his credit by giving notes. The law, we submit, is otherwise, and that the charge in this particular is erroneous." Let us see what this fourth request was. We find it to be as follows: "If the management of its account with the Merchants and Planters Bank by its agent was done with the knowledge and consent of the defendant company, and if it was conducted in such a manner as to lead a man of ordinary caution and prudence to believe that the agent had authority to obtain credit to buy or to buy on credit, and if the agent referred the plaintiff to the officers of the bank to ascertain whether the check alleged to have been given him was good and would be paid, and if the officers of the bank, relying on the previous course of dealing between the defendant and the bank through the defendant's agent, were led to believe, and did believe, that the defendant's agent had authority to give such a check, and if a person of ordinary caution and prudence in business would, from the past dealings between the defendant and the bank, have been warranted in so believing, then the defendant would be bound by the acts of its agent within the apparent authority which such course would have indicated." When a request to charge is referred to, as to its terms and effect,

such requests should be either copied or completely embodied in the statement of its purport. Reading this exception in connection with plaintiff's fourth request to charge, the value of the preceding observation is manifest. The request to charge contains sound law. A principal must be responsible for the acts of its agent within the limitations of the authority conferred upon the agent. When this limitation of authority is to be derived from the dealings of such plaintiff and agent, the rule must be such as a person of ordinary caution and prudence in business would have been warranted in believing to exist. We overrule this exception.

"28th. In modifying the plaintiff's fourth request to charge in such a way as to instruct the jury in effect that while a mere authority to buy cotton does not include or imply power to buy cotton on a credit, and to give post-dated checks therefor, still if in addition to the mere giving of power to buy cotton, special instructions are given not to buy except for cash, one dealing with such an agent would not be bound by such special instructions unless they were known to him." The Circuit Judge did not modify the fourth request of plaintiff. This exception is overruled.

"29th. In charging the jury in connection with the twelfth request that the taking from an agent of anything to make good the loss or injury which his unauthorized act has entailed, would amount to ratification." When the whole charge of the Circuit Judge is read, it is apparent that there is no foundation as to error pointed out here. It seems to us that the retention by defendant of plaintiff's thirty-five bales of cotton after defendant knew all the facts, was a ratification of its agent's contract to purchase for the principal such thirty-five bales of cotton. Let the exception be overruled.

"30th. In instructing the jury at the conclusion of his Honor's reference to the requests to charge, as to the difference between a general agency and a special agency, and, as we submit, instructing the jury erroneously as to such difference to the prejudice of the defend-

ant, and further in charging the jury that it would be neces-
sary for them in this case to determine whether the agency
was general or special." We are satisfied that the many ex-
planations of the Circuit Judge as to agency in its different·
forms were entirely understood by the jury. It cannot de-
stroy such a charge that at its close there may be a little
looseness of expression. Let this exception be overruled.

"31st. In failing to instruct the jury as to the law relating
to estoppel, when the defense of estoppel was clearly pleaded,
and when the Constitution of the State of South Carolina re-
quires that Circuit Judges shall charge the law relating to
the issues raised in the pleadings. And particularly when
the Circuit Judge, in his preliminary charge to the jury, ex-
pressly stated that in his general charge he would give them
the law relating to defense of estoppel." The appellant fails
to show wherein any basis had been laid in the testimony for
the application of the doctrine of estoppel. If no such basis
was made, the Circuit Judge would have been wasting valua-
ble time to be discussing abstract questions of law in the
presence of the jury. We are obliged to overrule this excep-
tion.

"32d. In charging the jury, when they were called back
into the jury room in answer to the question of one· of the
jurors, that if the defendant accepted any property from his
agent in satisfaction of injury caused by an unauthorized
act, it would amount to ratification; especially was this in-
struction erroneous and prejudicial to the defendant, in that,
in connection with such instruction, the jury were not
charged that if the property referred to was accepted upon
some loss other than that caused by the particular transac-
tion involved in this issue, it would not, of course, amount to
a ratification of the particular act alleged in this action to be
unauthorized. Appellant respectfully submits that in view
of the fact that other losses were proven to have been caused
defendant by their agent, the general terms used by the Cir-
cuit Judge were calculated to lead the jury to believe that if
the insurance policy was turned over on account of any loss,

it would amount to a ratification." · In response to a request from the jury, the Circuit Judge did add some words on the subject of what would amount to a ratification by reason of benefits received, &c.   But this language, taken in connection with the general charge, shows that the jury could not have been misled thereby.   We will, therefore, overrule this exception.

And lastly, we will next consider the 33d exception.   "33d. In instructing the jury when they came back into the Court room as follows : 'It is the theory of the law that jurors shall come to an agreement, and find a verdict especially on the civil side of the Court, when the proof necessary on which to base a verdict is not proved beyond a reasonable doubt, but only proof to the extent of the preponderance of the evidence, and where a verdict shall be rendered if the measure of the proof has not been filled up.'   The error being in charging the jury that there is a distinction between civil and criminal cases in the matter referred to, when, as we respectfully submit, there is no such distinction between the two classes of cases as to the obligation of the jurors to adhere to their conscientious convictions upon the one part, and to avoid being moved by caprice or mere pride of opinion upon the other, in their efforts to reach a verdict. To charge the jury that there was a distinction between civil and criminal cases, and in effect that the duty to avoid a mistrial was greater in civil than in criminal cases, was error of law and prejudicial to defendant."   We cannot see that injury resulted to the defendant from this language used by the Circuit Judge.   The exception is, therefore, overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MESSRS. CHIEF JUSTICE MCIVER and JUSTICES GARY and JONES concur in result.