### BATES, REED & COOLEY v. KILLIAN & BROTHERS.

1. Attachments may be dissolved upon two grounds : 1st, Where some irregularity of a fatal character appears on the face of the proceedings; 2d, Because that the allegations upon which it was issued are untrue.
2. Defendant having given a bond under Section 265 of the Code, did not thereby waive his right to have the attachments discharged, under section 264, as irregularly and improvidently granted.

Before ALDRICH, J., Greenville, January, 1882.

This was a motion made by defendants at Pickens to have certain attachments upon their property, under proceedings in Greenville, vacated. The motion was supported by affidavits and was based upon the following grounds: 1st. Because the affidavit on which said attachment was issued was insufficient. 2d. Because the allegations of fraud, or that the defendants had disposed of, secreted or concealed, or were disposing of, secreting and concealing, their property with intent to defraud their creditors, contained in said affidavit, are not true. 3d. Because many other statements made in said affidavit are not true. 4th. Because said affidavit and attachment are in many other respects irregular and void.

This motion was granted, the Circuit judge holding that there was no fraud as charged in the affidavits upon which the attachments issued. From this order the plaintiffs appealed upon the following grounds :

1. Because the defendants had their option either to give the undertaking or to move to discharge the attachment, as in case of other provisional remedies, and having elected to adopt the first course, it is respectfully submitted that they waived their right to the second, and his Honor should have so held.

2. Because the attachment having been discharged upon undertaking could not be again discharged upon motion.

Messrs. *Wells & Orr*, for appellants.

Mr. *M. F. Ansel*, contra.

August 9th, 1882.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE SIMPSON.—The plaintiffs, appellants, in an action for the recovery of $1942.53, alleged by plaintiffs to be due them from the defendants, attached certain property of the defendants, consisting of a stock of goods.  The defendants applied under § 264 of the code for the surrender of the goods, which upon the execution of the bond required by § 265 of the code was ordered, and the property thereby discharged from the lien of the attachment.  Two other attachments were afterwards issued, one of which was by the plaintiff.

Subsequently, the defendants moved to discharge all three of the attachments, upon affidavits served.  The appellants resisted the discharge of the first, upon the ground that the defendants having adopted the proceeding provided in the code for the surrender of the property, and having thereby obtained possession, they had waived their right to assail the attachment on any ground, and therefore that their motion as to this attachment should be refused.  The Circuit judge overruled this position and discharged all three of the attachments, including the first.  The appeal questions the correctness of this ruling as to the first.

Attachments may be dissolved or defeated upon two grounds: 1st. Where some irregularity of a fatal character appears on the face of the proceedings; and 2d. Because of the fact that the allegations upon which it may issue are untrue.  The dissolution in either case may be had upon motion —the first being made upon the papers, and the second upon affidavits as to matters dehors the record.  These causes go to the root of the attachment, especially in the last class of cases, and when they exist the effect of their interposition is not simply to release the property but to entirely vacate and set aside the attachment proceedings.

Besides this remedy, in cases where the attachment has been irregularly issued, or issued without warrant of law, section 265 of the code *supra* provides for the release of the property attached, where the attachment has been legally issued and

there is no objection as to its regularity or want of observance of proper form, the effect of which provision, when adopted by the defendant, is to convert the action from one *in rem* to one *in personam*, with security by the defendant for the payment of the debt. This is done by permitting the defendant to give bond for the payment of the debt in the event that the plaintiff's action succeeds, the purpose of an attachment being to obtain security for the debt by securing a lien on property. The bond provided for is substituted in the place of this lien, and the property is released.

This proceeding is proper where there is no ground to attack the attachment for either of the causes mentioned first above. Where either of the causes exists, parties would ordinarily be presumed to know it, and no doubt would promptly avail themselves of the opportunity offered to assail the attachment, and in such case there would be no necessity to give the undertaking provided for in the Code. The property attached could be released without this additional liability. There can be no doubt but that the relief provided for in section 265 of the Code was intended primarily to meet the cases where the attachments were regular and valid, and yet where it would be a hardship to the debtor to be deprived of the use of his property during the pendency of the action. This remedy respects the rights and interests of both creditor and debtor, and while it releases the property to the use of the debtor, it gives the creditor a security in the undertaking which it requires equally as reliable as the lien which it displaces.

Now the question arises whether when the debtor avails himself of the latter remedy in the first instance, he can afterwards retrace his steps, and invoke the first; whether after having admitted the legality of the attachment proceeding by applying simply for the release of his property by giving the creditor another security, he can still assail the attachment, because it was irregularly or imprudently issued, and if successful vacate and set aside not only the attachment proceedings, but also the security undertaking which he has previously given.

This question has never been raised before in this State under our attachment laws; nor has there been uniformity of

decision upon it in other States where attachment proceedings are provided for. Mr. Drake in his work on attachments, § 318, says that in Mississippi the court seemed to consider that the execution of the bond released any technical objections to the preliminary proceedings, _Wharton_ v. _Conger_, 9 _Smedes & M._ 510; while in the Supreme Court of the United States and that of Missouri it was held that thereafter the defendant could not take any exception to the attachment, or to the regularity of the proceedings under it. _Barry_ v. _Foyles_, 1 _Peters_, 311; _Payne_ v. _Snell_, 3 _Mo._ 409. In Louisiana a different rule prevails. 14 _La._ 82; 1 _La. Ann._ 372. In Arkansas it was held that the execution of the bond did not preclude the defendant from interposing pleas in abatement, founded on irregularities in the proceeding, _Childress_ v. _Fowler_, 9 _Ark._ 159. In Kentucky, in _Hazelrigg_ v. _Donaldson_, 2 _Metc._ 445, the court decided that the execution of a bond under the Code discharged the attachment by operation of law, and rendered the obligors in the bond unconditionally bound to perform the judgment of the court in the action, and that the sufficiency of the grounds for obtaining the attachment could not therefore be inquired into. And in 3 _Mich._ 18 it was held that the defendant in an attachment, having executed a bond to the sheriff and procured a release of the property under the Revised Statutes, is thereby estopped from applying for a dissolution of the attachment.

The authorities elsewhere, it will be observed, are conflicting, with strong reasons on either side. This being the first case in this State, we must mark out a course for ourselves. When we consider the purpose and intent of the proceeding under section 265 of the Code, we can see no good reason why the adoption of that proceeding should forfeit the right on the part of the defendant to impeach the legality of the attachments afterwards. It is true that that provision is founded on the idea that the attachment was properly issued and has secured a valid lien on the property attached, and the plaintiff is not required to release the lien except upon the condition that he is furnished with another security—and this is furnished by the undertaking which that section requires, the

consideration of this undertaking being the release of the lien already secured.

But suppose the attachment in truth and fact had been irregularly or improvidently issued, so much so as to render it invalid, had a motion been made in the first instance to vacate it, should the fact that the defendant had released the property by his bond to the sheriff cure these defects, and render that legal which under the supposition made is utterly illegal? Such should not be the result, unless for some controlling reason. The proceeding under this section is a prompt proceeding by which the defendant may at once release his property. It may be in many cases of the utmost importance to the defendant that the release should be had at once, where delay would be ruinous. Hence he is allowed to obtain the release from the sheriff, an officer near at hand, and before whom prompt action can be taken, whereas his motion to vacate must be made before a judge, sometimes at an inconvenient distance and with delay. Under such circumstances why should the defendant be expected to avail himself of this prompt relief, at the peril of legalizing the attachment?

The attaching creditor, when he has secured a legal lien, of course ought not to be required to give it up, except upon an equivalent, but at the same time, if the lien is invalid because the attachment is illegal, why should he be entitled to hold the substituted security, which he has obtained upon a condition which in fact never existed? There can be no reason except that inasmuch as the remedy under section 265 is based upon the presumption that there is no valid objection to the attachment, a defendant resorting to it is supposed to have assented to its correctness. Admitting this to be true, does it follow that a defendant should also be regarded as having thereby waived all right to impeach the attachment afterwards?

There are cases where a failure to take advantage of alleged defects or to assert rights will entail forfeiture, but this is on the principle that some right has attached to the other party in consequence of such failure which it would be inequitable now to divest, or some remedy omitted, or injury would ensue which but for the failure might have been provided against.

In such case the doctrine of estoppel should apply. But the case before the court is not a case of that character. The bond which the plaintiffs hold as security for their debt, stands in the place of the property which that bond released. Had no bond been given, if the attachment was improvidently issued. the lien which it had obtained was an invalid lien and could have been vacated at any time, in some of our sister States, even after judgment. This being so, there can be no good reason why the bond, which occupies the place of the property, should not also be released, when surrounded by the same circumstances which if present would release the property. In New York it was held that the giving up of an undertaking to obtain the return of the property attached will not preclude the defendant from moving to set aside the attachment for irregularity or on the merits. 2 *Wait Prac.* 184.

Our Code after providing for the surrender of the attached property as found in sections 264 and 265 concludes the latter section as follows: "In *all cases* the defendant may move to discharge the attachment as in the case of other provisional remedies." This language is broad and comprehensive; it includes expressly all cases. It is found as a part of one of the acts of the Legislature, and embracing, as it does, all cases of attachment, we have no power to limit or contract it to one or two classes of cases only.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.