7566

## SAVINGS BANK OF FORT MILL v. ALEXANDER SPRUNT & SON.

1. MOTION TO VACATE ATTACHMENT and to release bond because the affidavit was not sufficient and not filed in time comes too late after trial begun without previous notice.

2. APPEAL.—Objection to evidence admitted with assent of appellant with permission to move to strike it out, no motion having been made, will not be entertained.

3. EVIDENCE—CONTRACTS.—While the usages and customs of trade are admissible to aid in construing contracts, it was not error under the evidence here to rule out evidence as to the custom in banking circles as to paying for cotton and use of bills of lading in connection therewith.

4. EVIDENCE—LETTER.—Exclusion of letter by drawer of draft in question to agent of defendant objecting to deductions and demanding return of bill of lading was not harmful to appellant.

5. IBID.—Evidence tending to show dealings in cotton by alleged agent of defendant with others for the purpose of showing he was an independent dealer was not relevant here.

6. PRINCIPAL AND AGENT—ISSUES.—Evidence here tending to show the drawer of the draft acted as the agent of defendant and that defendant ratified his acts by retaining the bills of lading and the money due for the cotton and that plaintiff had no knowledge of any limitations on the authority of the agent carries the issue of defendant's liability to the jury.

7. IBID.—Alleged erroneous instructions as to: (1) the binding effects on the principal of the acts of agents beyond the scope of their authority without notice to the party interested, (2) notice of limitation of agent's authority derived solely from his dealings, and (3) ratification of acts of agent by retention of property acquired by him, construed with the whole charge, held not error.

8. INTEREST.—Party paying for cotton for benefit of another is entitled to interest on amount paid from date of payment.

Before KLUGH, J., York, ———— Affirmed.

Action by Savings Bank of Fort Mill against Alexander Sprunt & Son. From judgment for plaintiff, defendants appeal

*Messrs. J. H. Marion* and *J. S. Brice,* for appellant. *Mr. Marion* cites: *Nonsuit should have been granted:* Sec. 192, Code Proc.; 33 S. C., 477; 37 S. C., 603. *Acts of agent without authority are not binding on principal:* 65 S. C., 557; 3 DeS. Eq., 393; 7 Rich., 528; 3 Rich 42; 1 Ency., 1022-25; 10 Rich. L., 338; 24 Ia., 99; 1 Ency., 998; 55 S. E., 812. *Subagent—bills of lading:* 4 S. C., 386; 27 S. C., 132; 10 Rich., 332; 42 S. E., 473; 49 S. E., 54. *Trade, usage and custom:* 29 Ency., 394-409; 10 Rich. L., 338. *Principal and agent:* 49 S. C., 1005, 50 S. E., 880; 49 S. E., 54; 35 S. C., 517; 73 S. C., 48. *Attachment void:* 32 S. C., 157; 46 S. C., 9; 50 S. C., 380; Code Proc., 263, 246, 402.

*Messrs. Spencers* and *Dunlap,* contra, cite: *Scope of agency:* 55 S. C., 568; *Bank of Union* v. *Clifton Mfg. Co.*

April 29, 1910.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.   The plaintiff brought this action against James Sprunt and William R. Sprunt, as Alexander Sprunt & Son, to recover $1,567.50 with interest, on account of money advanced to defendants at their request to purchase and pay for twenty-eight bales of cotton in the town of Fort Mill on February 22, 1908.

At the commencement of the action, February 24, 1908, upon affidavits showing, among other things, that the defendants were non-residents, plaintiff caused the cotton to be attached.   The judgment was for the plaintiff for the full amount claimed with interest.

After the jury were empaneled and sworn and the pleadings read, defendant's counsel moved to vacate the attachment and release the bond given on the grounds that the affidavit upon which the attachment was issued was insufficient, and was not filed in the clerk's office within the time required by law.   The Court refused the motion on the ground that no notice of the motion had been given, and expressed doubt whether at that stage of the case such a motion should be entertained.

The refusal of the motion is the basis of the first exception, but we think there was no error.   By section 263 of the Code of Procedure, motion to dissolve attachment may be made as in the case of other provisional remedies, and by section 246, in reference to injunctions, it is provided "defendants at any time before trial may apply upon notice, etc., to vacate or modify the same."

In this case no notice had been given and the trial had begun.   The attachment is a collateral proceeding, and its sufficiency or regularity is not necessarily involved in the trial of the cause.

The second exception is not well taken, because the testimony of W. B. Meacham was admitted by assent of appellant with the privilege to move to strike it out, and there was no motion to strike out.

The witness, John T. Roddey, was asked to state whether in buying cotton from various parties they frequently asked him to send the check or to make deposits with a certain bank to their account. This was ruled incompetent.

The witness, W. J. Simpson, was asked the question: "State whether or not in case Mr. Sellers or anybody else had a transaction, what that transaction was?" To which the witness answered: "In buying cotton away from my town, Chester, almost every one will make a draft on me. for that amount of money." On objection, this was ruled incompetent.

The witness, Robert Gage, was asked the question: "What is the custom in banking circles as to the possession of a bill of lading?" This was ruled incompetent. The third, tenth and thirteenth exceptions are directed to these rulings, and contention is made that appellants had the right thus to show the usage and custom of the cotton trade and banking institutions with respect to the method of paying for cotton, and the use of bills of lading in that connection.

In a proper case it may be reversible error to exclude testimony as to the usages and custom of trade in interpreting a contract. *Thomas* v. *O'Hara*, 1 Mill, 303, 29 Ency. Law, 2d Ed., 424. But we do not think there was such error in this case. The utmost latitude was allowed appellant to show methods of business and course of dealing between any of the parties or their agents with respect to the plaintiff bank and the Commercial Bank at Chester, S. C., where W. J. Simpson, the alleged agent of the defendants, did his principal business. The cashier of the plaintiff bank gave his version of the contract with the alleged representative of defendant, and defendant's alleged agent

denied that there was any contract. We can not see how the defendant has been prejudiced.

The exclusion of a letter alleged to have been written by W. T. Sellers to W. J. Simpson, dated February 23, 1908, which is the basis of the eleventh exception, can not be held error. The contents of the letter are not shown in the record.

We cannot assume the letter to be as stated only in the exception and argument of appellant, and we cannot assume that Sellers had a right to bind plaintiff by his declaration after the rights, if any, of plaintiff had accrued; but were we to assume these matters, the exclusion of the letter could have done appellant no harm, as it denied the right of W. J. Simpson, or appellant, to deduct the claim of $339.77 on previous transactions in this transaction, returned the check sent Sellers for the balance, and directed Simpson to return the bill of lading or send exchange to the plaintiff.

The twelfth exception alleges error in excluding as irrelevant and incompetent the testimony of the witness, H. T. Williams, as follows: "Q. At this time along in January and February, 1908, state whether Mr. Sellers offered to sell you cotton? A. Yes, sir. He offered to sell me cotton." The contention of appellant is that the testimony was relevant to show that Sellers was an independent cotton buyer, and not buying for Sprunt & Son or W. J. Simpson. The testimony was properly excluded, as the dealings of Sellers with others in respect to other cotton had no bearing upon the particular transaction under consideration.

The fourth exception to the overruling of motion for nonsuit, and the ninth exception to the refusal to direct a verdict for defendant present the question whether there was any testimony in support of the allegations of the complaint. The complaint alleged that the plaintiff advanced the money to pay for the twenty-eight bales of cotton at the request of defendant.

There was no testimony that any such advance was made directly to defendants, or at the direct request of defendant, but there was testimony that W. J. Simpson, residing at Chester, S. C., was agent of defendants to buy cotton for them exclusively, and that Simpson had an agreement with the plaintiff bank under which the plaintiff was to send to Simpson the bills of lading of cotton showing that W. J. Simpson had consigned Alexander Sprunt & Son, Wilmington, N. C., the cotton specified, and that upon receipt of such bill of lading, W. J. Simpson was to have the Commercial Bank of Chester remit direct to the plaintiff bank.

This had been the course of dealing in some six or seven previous transactions in which W. T. Sellers had turned over to plaintiff and plaintiff to Simpson bills of lading of cotton so consigned and in every case remittance for the cotton had been direct to plaintiff. On February 22, 1908, W. T. Sellers delivered to the plaintiff bills of lading for the twenty-eight bales of cotton showing consignment by W. J. Simpson to Sprunt & Sons, and checked on the plaintiff bank to pay for the cotton so consigned. Plaintiff authorized Sellers, while in the bank, to use the stationery of the bank and send the bills of lading and invoice to Simpson, which was done in this case, with instruction to remit to plaintiff. Simpson had an arrangement with the Commercial Bank of Chester, S. C., by which he was to make draft through that bank on Sprunt & Son with bill of lading attached, whereupon the Commercial Bank would honor the checks of Simpson or give exchange to the extent of the draft on Sprunt & Son. In this way Simpson secured and paid for the cotton represented by the bills of lading showing cotton consigned by him to Sprunt & Son. On the receipt of the bills of lading in this case, Simpson, on February 22, 1908, made draft on Sprunt & Son with bills of lading attached with accompanying invoice representing twenty-eight bales of octton, value $1,567.50, "bought by W. J. Simpson, agent for account of Alexander

Sprunt and Son," with a further statement that "this purchase was reported by 'phone on the 21st inst."

Then Simpson sent check of Commercial Bank to Sprunt & Son for $339,77, the amount claimed by Sprunt & Son against Simpson, as agent, on account of a claim arising out of previous transactions with Sellers, and sent check direct to Sellers for the balance $1,227.73, both checks aggregating the invoice price of the cotton, $1,567.50 the amount which plaintiff had paid out for the purchase of the cotton represented by the bills of lading delivered by plaintiff to Simpson. Sellers at once returned the check to Simpson, and plaintiff wrote Simpson stating that plaintiff paid for and owned the cotton, and had nothing to do with any differences between Simpson and anyone, and demanded that he sent check direct to plaintiff, as had been done previously.

Then Simpson had the Commercial Bank to take up the check sent to Sellers and substitute a check for a like amount payable to the order of Sprunt & Son, which was sent to and received by Sprunt & Son. So that it appeared that Sprunt & Son not only has the bills of lading, but retains money due for the cotton represented thereby which rightfully belongs to plaintiff.

It seems to us that the foregoing affords some evidence that Simpson was acting within the apparent scope of his authority as agent of defendants, and that defendants have ratified his agency, in this transaction.

The contract between Simpson and defendants was introduced in evidence by defendants, and contains, among other stipulations, the following:

1st. "The said firm agrees to engage the services of the said W. J. Simpson, of Chester, S. C., as their agent or agents to buy cotton, exclusively, for the said firm for and during the cotton season of 1907-1908; the term of his or their employment to be at the pleasure of said firm, but in no

case to exceed the period of six months from September 1, 1907.

2d. "The said party of the first part further agrees that the said agent or agents may draw drafts on said firm in payment for cotton bought for said firm, duly advising them per mail of said drafts and for what drawn, either forwarding railroad receipts for cotton sufficient to cover said drafts, per same mail direct to said firm, or attaching them to draft, it being mutually agreed that no draft will be honored otherwise. But it is distinctly understood and agreed by the parties hereto that all drafts, drawn by said agent or agents on said firm, shall be solely for the purpose and payment of cotton bought for said firm, and for no other purpose whatsoever, and that no other business relation is to exist between said firm and said agent or agents than that of the purchase of cotton as above stated. Party of second part to make arrangements for banking on his or their own account, and no drafts are to be paid or money remitted by the party of the first part, unless the same amount shall be at the credit of the party of the second part."

There was no conclusive evidence that plaintiff was aware of any limitations on the authority of Simpson as agent to purchase cotton for defendant.

The fifth, sixth and seventh exceptions to the charge of the Court on the subject of agency are as follows:

(5.) "That the trial Judge erred in charging the plaintiff's fourth request, as follows: 'Even where the agent acts beyond the scope of his authority as between himself and his principal, the principal is bound if the other party did not know, and had no reason to believe, the agent was so acting, and if the open and public acts of the agent were of such a nature as that a person of ordinary business prudence would be justified in concluding that the agent's authority in and about the matter was unlimited.' Error consisting in that the open and public acts of an agent acting beyond the scope of his authority

are not sufficient to bind the principal unless such acts were brought to the attention of the principal, or were of such a character to reasonably justify the inference that the principal had knowledge of such acts.

(6.) "That the trial Judge erred in charging plaintiff's sixth request, as follows: 'When the limitations of the agent's authority is to be derived solely from his dealings, said limitations must be such that a person of ordinary prudence in business matters would be warranted in believing them to exist.' Error consisting in that the said charge was in conflict with the principle of law that third persons dealing with a special agent or an agent of unlimited authority deal with such agent at their peril and are held to the duty of ascertaining the extent of the agent's authority, and in that the said charge assumed the correctness of the proposition that it was competent and proper to derive the limitations of an agent's authority solely from the agent's acts and conduct.

(7) "That the trial Judge erred in charging, subject to the modification made, the plaintiff's seventh request, as follows: 'The retention by the principal of the articles purchased by the agent after the principal's knowledge of the facts, amounts to a ratification of the agent's acts, even though they may have been beyond the scope of his authority in the first instance.' Error consisting in that by said charge the jury was instructed that retention of the proceeds of a transaction by the principal was to be considered evidence of a ratification of an agent's transgression of his authority with respect to the transaction in the absence of evidence tending to show that the principal knew, or ought to have known, of agent's exceeding his authority."

Construing the portions of the charge under exception with the whole charge given, it is free from error. *Welch* v. *Clifton Mfg. Co.,* 55 S. C., 568, 33 S. E., 739.

The eighth exception alleges error in the instruction that if the jury concluded plaintiff was entitled to recover, the

verdict should be for the amount claimed with interest from February 22, 1908. There was no error in this, as it was not disputed that the value of the cotton represented by the bills of lading dated February 22, 1908, at the stipulated price amounted to $1,567.50, and if plaintiff was entitled to recover at all, it was entitled to recover this sum with interest.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.