Joseph P. SCHILLACI, doing business as Regal Art Co., Plaintiff,

v.

Otto K. OLESEN, individually, and as Postmaster of the City of Los Angeles, State of California, Defendant.

Civ. No. 293–58.

United States District Court
S. D. California,
Central Division.

April 22, 1958.

Stanley Fleishman, of Brock, Fleishman & Rykoff, Hollywood, Cal., and Edwin M. Rosendahl, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., for the Southern Dist. of Cal., Los Angeles, Cal., by Richard A. Lavine, and Alfred B. Doutre, Asst. U. S. Attys., Los Angeles, Cal., for defendant Otto K. Olesen, individually, and as Postmaster of the City of Los Angeles, Cal.

TOLIN, District Judge.

In his Complaint plaintiff prays for an injunction and declaratory relief. He alleges that he is doing business as Regal Art Co. and is engaged in the business of distributing and selling through the mail motion pictures, slides and photographs. The Complaint further pleads that on November 28, 1957, the Post Office Department, acting administratively upon a Complaint filed the preceding day, took action pursuant to Title 39 U.S.C.A. § 259a.[1] In said Complaint [2] filed before the Postmaster General it was alleged that plaintiff was obtaining money for obscene, lewd, lascivious and indecent matter and giving information as to where, how and from whom such matter might be obtained, and that this activity

---

[1] "Exclusion from mails of matter relating to the sale and advertisement of obscene, lewd, etc., articles, matters, devices, things, or substances.

"Upon evidence satisfactory to the Postmaster General that any person, firm, corporation, company, partnership, or association is obtaining, or attempting to obtain, remittances of money or property of any kind through the mails for any obscene, lewd, lascivious, indecent, filthy, or vile article, matter, thing, device, or substance, or is depositing or is causing to be deposited in the United States mails information as to where, how, or from whom the same may be obtained, the Postmaster General may—

"(a) instruct postmasters at any post office at which registered letters or any other letters or mail matter arrive directed to any such person, firm, corporation, company, partnership, or association, or to the agent or representative of such person, firm, corporation, company, partnership, or association, to return all such mail matter to the postmaster at the office at which it was originally mailed, with the word 'Unlawful' plainly written or stamped upon the outside thereof, and all such mail matter so returned to such postmasters shall be by them returned to the senders thereof, under such regulations as the Postmaster General may prescribe; and

"(b) forbid the payment by any postmaster to any such person, firm, corporation, company, partnership, or association, or to the agent or representative of such person, firm, corporation, company, partnership, or association, of any money order or postal note drawn to the order of such person, firm, corporation, company, partnership, or association, or to the agent or representative of such person, firm, corporation, company, partnership, or association, and the Postmaster General may provide by regulation for the return to the remitters of the sums named in such money orders or postal notes. Aug. 16, 1950, c. 721, 64 Stat. 451."

[2] The Complaint defined in § 259b of Title 39 U.S.C.A., and not the Complaint which initiated the case in this District Court.

was being implemented by the use of the United States mails. In this administrative proceeding plaintiff filed an answer denying the charges. A hearing was thereafter had before a Hearing Examiner of the Post Office Department. A decision has not yet been rendered. On March 26, 1958, without prior notice or hearing, defendant, acting upon orders of the Acting General Counsel for the Department, issued an Order directing that, effective March 31, 1958, the Postmaster of the City of Los Angeles would withhold from delivery and detain in his office any and all mail received (with minor exceptions) addressed to plaintiff's business name Regal Art Co. By its terms this Order is to expire twenty days from March 31, 1958, "* * * unless the period of impounding is extended by order of the United States District Court."

It appears from the further allegations of the Complaint in this action in this District Court that the administrative Order above referred to brought into life the remedies stated in § 259b [3] of Title 39 U.S.C.A. Plaintiff in this Court

---

3. *"Detention of mail containing obscene matters—Interim order; jurisdiction of court; appeal; right to examine mail.*

"Whenever the Postmaster General shall determine during proceedings before him that in the administration of section 259a of this title, such action is necessary to the effective enforcement of such section, he may enter an interim order directing that mail addressed to any person be held and detained by the postmaster at the post office of delivery for a period of twenty days from the effective date of such order. Notice of such order, advising such person of the holding and detention and setting forth in specific detail the reasons therefor, together with a copy of sections 259a–259c of this title, shall be sent forthwith by registered or certified mail to such person at the post office at which such mail is to be held and detained. Any such order for the holding and detention of mail addressed to any person shall expire at the end of the twenty days after the issuance thereof unless the Postmaster General shall file, prior to the expiration of such twenty-day period, a petition in the United States district court for the district in which the post office in which such mail is held or detained is situated, and obtain an order directing that mail addressed to such person be held and detained for such further period as the court shall determine. Notice of the filing of any such petition shall be given forthwith by the clerk of the court in which such petition is filed to such person, at the post office at which the mail is being detained (or otherwise as the clerk of the court shall determine to be appropriate), and such person shall have five days in which to appear and show cause why such order should not issue. If, upon all the evidence before it, the court shall determine that the continued withholding and detention of mail addressed to such person is reasonable and necessary to the effective enforcement of section 259a of this title, it shall forthwith issue an order directing that mail addressed to such person be held and detained by the postmaster at the office of delivery until conclusion of the proceeding by the Postmaster General or until further order of the court. If the court shall determine, upon all the evidence before it, that the continued withholding and detention of mail addressed to such person is not reasonable or necessary in the administration of section 259a of this title, it shall dismiss the petition and order all mail addressed to such person held or detained in any post office to be released forthwith for delivery. An appeal from the order of the court shall be allowed as in civil causes. Any order of the Postmaster General or of the district court, under sections 259b and 259c of this title, may be dissolved by such court at any time for cause, including failure to conduct expeditiously the proceedings instituted against such person before the Postmaster General with respect to section 259a of this title. When, under any order herein authorized to be issued by the Postmaster General or the district court, a person's mail is detained and held by the postmaster at the office of delivery, such person shall have the right to examine said mail and receive such mail as clearly is not connected with the alleged unlawful activity.

"*Definition of person*

"(b) As used in sections 259b and 259c of this title the term 'person' means any individual, firm, corporation, company, partnership, or association.

"*Exemption from Administrative Procedure Act*

"(c) Action by the Postmaster General in issuing the interim order provided for herein and petitioning for a continu-

contends that the interim order issued against him administratively by the Postmaster General, although permitted by the provisions of § 259b of Title 39 U.S.C.A., invades the Constitutional protection that all persons are assured of due process of law. Upon the filing of the Complaint, the Court issued its order to show cause and temporary restraining order. The case is now before the Court following a hearing upon the order to show cause and temporary restraining order and motion for preliminary injunction. The twenty-day life of the administrative order directed to defendant requiring defendant to withhold mail from delivery to plaintiff has not expired.

The obvious purpose of § 259a of Title 39 U.S.C.A., is to provide an administrative method by which the Postmaster General may exclude from mailing privileges those persons who obtain remittances of money through the mails for obscene, lewd, lascivious or indecent matter, or who give information through the mails as to where, how, or from whom such matter may be obtained. Section 259b of the same Title simply undertakes to provide an administrative provisional remedy somewhat like that of attachment by which the claimed offensive matter may be detained for a period of twenty days subject to such further detention as a United States District Court for the District in which the mail is held shall determine.

■ Upon its own motion the Court has dissolved the Temporary Restraining Order and dismissed the action upon the ground that because of the provisional and temporary nature of the order, action in this Court is premature. When mail is detained pursuant to an interim order administratively issued by the Postmaster General pursuant to § 259b of Title 39 U.S.C.A., the Postmaster General is doing no more than to preserve intact the

questioned mail matter which he seeks to have administratively determined to be objectionable by the proceedings specified in § 259a of Title 39. Section 259b provides that the person to whom the mail is addressed shall have the right to examine said mail and receive such mail as clearly is not connected with the alleged unlawful activity. By prompt exercise of his administrative remedies the Postmaster General can procure determination of the question as to whether the mailed matter is offensive; and from the context of the two Statutes, it appears that Congress expected him to do so within the twenty days from the issuance of an interim order. By the provisions of the Statute, if the determination is not made within that time the propriety of continued sequestration of the mail would be one for a United States District Court. The interim order issued under § 259b is in no sense a final determination. It is as transitory as an attachment of property which fails if a cause of action is not made out and is superseded in finality if the complaint be sustained. If the matter mailed should turn out to be inoffensive, then the plaintiff in this action will receive the mail after a modest delay. Should the administrative determination under § 259a be adverse to the plaintiff in this action, he may promptly litigate the matter in the District Court.

■ Provisional remedies such as attachment often interfere to some extent with the absolute enjoinment of some property right. The same is true of such peremptory and often used processes as the filing of a declaration of taking in land condemnation cases. No one any longer questions such action or the constitutional validity of a writ of attachment. This temporary sequestration, entirely provisional in nature, does not violate the right to due process. It is but a temporary remedy aimed at pre-

ance of such order under sections 259b and 259c of this title, shall not be subject to the requirements of the Adminis-

trative Procedure Act July 27, 1956, c. 755, § 1, 70 Stat. 699."

serving the *status quo* of the property pending litigation (in this case administrative determination) of a controversy which is subject to Judicial review. The basic rules by which the quality of such process must be measured are discussed in 12 Am.Jur.Constitutional Law, Chapter XIV, Due Process of Law, § 611:

*"Time in Relation to Judgment or Order.*—Although it is the general rule that everyone is entitled to a hearing as an essential part of due process of law, a statute is not unconstitutional merely because it authorizes a ministerial act by which possession of property is taken before the right to it has been judicially determined. This is done in cases of attachment and replevin, without objection, and is a matter in the discretion of the legislative power in creating remedies. But it is error for the court, on application of the plaintiff and before trial on the merits, to order the seizure and sale of property by provisional orders, where such seizure and sale would render ineffectual a judgment thereafter obtained after trial.

"A party must not be deprived of his property without a judicial hearing, but the stage of proceedings at which that hearing shall take place and the manner in which the cause of a party shall be brought before the judicial tribunal, provided it is not an unreasonably inconvenient and embarrassing one, are with the legislative power."

The analogous problem concerning attachment was discussed by Judge Bassett of the Supreme Judicial Court of Maine in the case of McInnes v. McKay[4], in which he stated:

"But, although an attachment may, within the broad meaning of the preceding definition, deprive one of property, yet conditional and temporary as it is, and part of the legal remedy and procedure by which the property of a debtor may be taken in satisfaction of the debt, if judgment be recovered, we do not think it is the deprivation of property contemplated by the Constitution. And if it be, it is not a deprivation without 'due process of law' for it is a part of a process, which during its proceeding gives notice and opportunity for hearing and judgment of some judicial or other authorized tribunal. The requirements of 'due process of law' and 'law of the land' are satisfied. * * * ".

██ As the present Order of the Postmaster General[5] is provisional, being ancillary to a proceeding which will determine the controversy, and as the Order can have but twenty days life before either determination of the controversy or Judicial action, the Court concludes that plaintiff's complaint here is a premature attack on the action of the Postmaster General. The provisional remedy afforded by § 259b of Title 39 U.S.C.A., is not open to attack in the District Court until the Postmaster General petitions for an order directing that mail be detained for an additional period, or until the problem is merged with those arising from an adverse ruling to the addressee under § 259a of Title 39 U.S. C.A. Accordingly, the Court has entered its Order dismissing this action.

4.  1928, 127 Me. 110, 141 A. 699, at page 702, affirmed 1928, 279 U.S. 820, 49 S. Ct. 344, 73 L.Ed. 975.

5.  In the administrative proceeding which is attacked before this Court, papers, letters, orders and proceedings were had by the Postmaster General under various departmental titles. This is not good practice as the Statute uniformly vests the right to action in the Postmaster General. "Assistant General Counsel", "Fraud Mailability Division", "Post Office Department", or "Acting General Counsel" are misnomers. Helpful though a supplemental identification of individual actor might be in dealing with the Postmaster General, the orders themselves should be in the name of that Office, for that is the authority designated in the Statute. In this record the departmental titles of subordinates to the Postmaster General have been read as Postmaster General.