**Phillip T. HARRISON, Plaintiff,**

v.

**Howard MORRIS, Defendant.**

**Civ. A. No. 73-1445.**

United States District Court,
D. South Carolina,
Greenville Division.

Jan. 30, 1974.

Duke K. McCall, Jr., of Leatherwood, Walker, Todd & Mann, Greenville, S. C., for plaintiff.

William M. Grant, Jr., of Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This matter comes before the court on motion of the defendant to vacate a warrant of attachment issued out of this court at the request of the plaintiff, who instituted an action by Summons and Complaint dated 15 November, 1973. The plaintiff therein alleged that the sum of Sixteen Thousand Four Hundred Six and 55/100 ($16,406.55) Dollars was due and owing him by the defendant on a promissory note which was then past due. His Second Cause of Action [1] alleged that he was entitled to an attachment against the defendant who owned or had an interest in two railroad car cabooses. The attachment was grounded on allegations in the Complaint and supporting affidavit that the defendant was attempting to remove [2] the railroad car cabooses from Greenville County, S. C. and dispose of them and would hinder or defraud the plaintiff in the collection of monies owed him. The defendant duly answered, pleading a general denial to the main cause of action and the attachment and raising several affirmative defenses and counterclaims. Concurrently, the defendant filed this motion to vacate the attachment on the grounds that the bond required by § 10–908 of the S.C. Code of Laws is defective on its face and the attachment should not have been issued and is a nullity; that the defendant has other property in the state which could satisfy any indebtedness adjusted against him; that this court has personal jurisdiction over the defendant and does not need an attachment for the property in order to obtain jurisdiction; that the plaintiff is aware of the foregoing but has sought this attachment in order to harass the defendant. Further the defendant maintains that he was given no notice or opportunity to contest the attachment prior to the seizure of his property thereby depriving him of due process of law.

Based on the pleadings, affidavits and exhibits presented to this court, it appears that the defendant herein is a resident and citizen of the State of New Jersey engaged in the restaurant business. It was apparently his intention

---

1. Attachment is an ancillary proceeding, ordinarily, and offers a provisional remedy for the action, which must be commenced in regular form before an attachment will issue. Plowden v. Mack, 217 S.C. 226, 60 S.E.2d 311 (1950); Savings Bank of Fort Mill v. Sprunt, 86 S.C. 8, 67 S.E. 955 (1910).

2. At the hearing on the motion counsel for defendant admitted the two cars attached were scheduled to be moved to New Jersey.

when entering into the contracts for purchase of thirty (30) railroad car cabooses to use these railroad cars as novelty items in that business. It is undisputed that the plaintiff contracted with the defendant in 1969 and in 1970 to sell the cabooses and that the total purchase price was Thirty-Nine Thousand Fifty and No/100 ($39,050.00) Dollars. Additionally it appears that the defendant and plaintiff have dealt in good faith with one another over a period of more than four (4) years and that during this time the defendant has paid more than half of the total purchase price owing to the plaintiff. Additionally, it is agreed that the defendant has expended considerable funds in refurbishing two of the railroad cars for use in his restaurant business and it is these two cabooses which the plaintiff has attached. In addition to these two railroad cabooses, there are at least twenty-eight (28) similar railroad cars which are the subject of the contract for sale and are located in Greenville County and to which the defendant has good title. It further appears that the defendant has refused to pay any more of the total purchase price because he alleges the cars are not as warranted and are defective.

Federal jurisdiction in this case is based on diversity of citizenship [3], with the plaintiff in South Carolina and the defendant in New Jersey. Service of process was pursuant to the South Carolina long-arm statute § 10.2–801 et seq., Code of Laws of South Carolina (1962). The complaint alleges that the matter in controversy exceeds the sum of $10,000, exclusive of interest and costs [4].

On May 14, 1969 the plaintiff and defendant entered into a contract for the sale by the plaintiff to the defendant of twenty-three railroad car cabooses for $34,500. On the same day, the plaintiff and defendant entered into a second sale agreement for seven cabooses for $4,550.

On March 7, 1973 the defendant executed a promissory note to the plaintiff in what appears to be an effort to consolidate the outstanding indebtedness of the defendant to the plaintiff.

Under the terms and provisions of this note, the defendant promised to pay $16,406.55, with $6,000 being due and payable on July 20, 1973, and the balance of $10,406.55 being due and payable on demand thereafter.

It appears that the defendant has refused and/or neglected to make any payments on this note. The plaintiff alleges that he made a demand for payment but that no payment was forthcoming. The plaintiff instituted this action on November 15, 1973 for a judgment on the note, together with accrued interest, as set forth in the provisions of the note. The plaintiff coupled with his complaint an attachment of two railroad car cabooses alleging that the defendant was attempting to remove them from Greenville County, South Carolina and that, plaintiff believed, defendant intended to dispose of them, thereby hindering, if not in fact, defrauding the plaintiff in efforts to collect the monies owed by the defendant to the plaintiff. Upon the plaintiff's request, the Clerk of this Court issued a Warrant of Attachment pursuant to the procedure of the South Carolina Code of Laws, § 10–901 [5] et seq., thereby preventing the de-

---

3. 28 U.S.C. § 1332.

4. Ibid.

5. Section 10–901(8) reads: Grounds for attachment generally.—In any action:

(8) When any person or corporation is about to remove any of his or its property from this State, or has assigned, disposed of or secreted or is about to assign, dispose of or secrete any of his or its property with intent to defraud creditors as mentioned in this chapter.

Section 10–905 provides: Affidavit required.—The warrant may be used whenever it shall appear by affidavit that a cause of action exists against the defendant, specifying the amount of the claim and the grounds thereof, and that the defendant is:

(1) A foreign corporation or not a resident of this State;

(2) The master, captain or agent of any sailing vessel entering any of the ports of this State and is about to take such vessel

fendant from removing the cabooses from Greenville County, South Carolina. The plaintiff further alleged in his attachment allegations that the two cabooses have a total value of $4,000 and that this is due in part to expensive repairs made upon them by the defendant. The defendant has not made any allegation of value on the two cabooses other than to assert that the purchase of thirty railroad car cabooses from the plaintiff was for a total sum of $39,050.

The defendant Morris moves this court, pursuant to § 10–932.1, Code of Laws of South Carolina 1962, as amended, for an order vacating the Writ of Attachment sought by the plaintiff. The court believes the defendant intended to move for a dismissal of the plaintiff's attachment for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C., Federal Rules of Civil Procedure 12(b)(6) [6], and therefore this motion will be treated as such.

It is not disputed that South Carolina law is to be applied by the court in this diversity of citizenship case [7].

## ISSUES

There are three issues presented by this motion: (1) is the bond required by § 10–908 [8], Code of Laws of South Carolina (1962) defective? (2) does the attachment of the two railroad car cabooses by the plaintiff serve only to harass the defendant? (3) should the plaintiff's attachment of the defendant's two railroad car cabooses be dismissed for the failure of the plaintiff to obtain a prejudgment hearing on the merits of the attachment when such was not required by the Code of Laws of South Carolina (1962)?

## BOND

■ From a review of the pleadings and instruments filed with the court it

out of any port of this State without paying the pilotage fees provided by law; or

(3)(a) Has departed from the State with intent to defraud his creditors or to avoid service of a summons or keeps himself concealed therein with the like intent, (b) has removed or is about to remove any of his property from this State with intent to defraud his creditors or (c) has assigned, disposed of or secreted or is about to assign, dispose of or secrete any of his property with the like intent, whether such defendant be a resident of this State or not.

But in cases in which the defendant is the master, captain or agent of any vessel entering any of the ports of this State it shall only be necessary that the affidavit show that a cause of action exists against such defendant for pilotage services, specifying the amount of the claim and the grounds thereof, and that the defendant is about to take such vessel out of any port of this State and refuses to pay or has not paid the fees provided by law for such pilotage services.

6. Fed.R.Civ.P. 12. Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on Pleadings.

.       .       .       .       .

(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third-party claim, shall be asserted in re-

sponsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted, . . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (1966).

7. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

8. Sec. 10–908. Code of Laws of South Carolina. Minimum bond required before obtaining attachment.—Before issuing the warrant, the judge, clerk or magistrate shall require a written undertaking on the part of the plaintiff, with sufficient surety, to the effect that if the defendant recover judgment or the attachment be set aside by order of the court the plaintiff will pay all costs that may be awarded to the defendant and all damages which he may sustain by reason of the attachment, not exceeding the sum specified in the undertaking, which shall be at least two hundred and fifty dollars, except in case of a warrant issued by a magistrate when it shall be at least twenty-five dollars.

appears that the plaintiff has filed a cash bond which meets all of the requirements of § 10–908, Code of Laws of South Carolina (1962). With a cash bond being posted there is of course no requirement that a surety bond also be taken out by the plaintiff. Section 10–908 simply requires that a minimum bond of $250.00 be filed with the clerk and that the bond be such that if the defendant recovers judgment, or the attachment be set aside by order of the court, that the plaintiff will pay all costs that may be awarded to the defendant and all damages which he may sustain by reason of the attachment. The cash bond meets these requirements. Defendant so admitted at the hearing on the motion.

## HARASSMENT

■ From a review of the plaintiff's second cause of action it appears that he has met all of the pleading requirements of § 10–905, Code of Laws of South Carolina (1962) in order to obtain an attachment initially. He insists that the two railroad car cabooses were about to be removed from Greenville County, South Carolina by the defendant and that their removal would prevent the plaintiff from levying on said railroad car cabooses and would defraud him.[9]

There is no evidence that the attachment was for the purpose of harassing the defendant. To the contrary, it affirmatively appears from the defendant's motion to vacate the Writ of Attachment that the defendant was indeed intending to remove the two cabooses from the State of South Carolina. An attachment proceeding by its very nature deprives the defendant of the lawful use and possession of his property until such time as the defendant either obtains a favorable judgment or posts a redelivery bond as required by § 10–930[10] et seq., Code of Laws of South Carolina (1962). The defendant has not sought redelivery of the two cabooses by posting a bond even though he alleges that he will suffer irreparable damages by this retention. This allegation is inconsistent with the defendant's failure to follow available remedies to retrieve the cabooses. The South Carolina Supreme Court has specifically said that one does not forfeit his right to impeach the legality of an attachment by posting a redelivery bond[11]. The court is not satisfied that the value of the remaining twenty-eight railroad cabooses is sufficient to satisfy the prayer of the plaintiff's complaint as there is no evidence in the record to show that the railroad car cabooses have a ready market available and that the current value of the remaining twenty-eight cabooses will exceed $16,406.55. To the contrary the defendant alleges in his answer and counterclaim that the cabooses do not meet the interchange requirements of the railroad industry, that they are in a defective condition and require refurbishing, and that the two which have been refurbished will suffer "considerable depreciation from weather and non-use".

## PREHEARING ATTACHMENT PROCEEDING

■ The general purposes of an attachment are to induce the appearance

---

9. See note 5, supra.

10. Section 10–930, S.C.Code 1962, as amended, provides: Discharge or return of property on defendant's appearance.
—Whenever the defendant shall have appeared in such action he may apply to the officer who issued the attachment or to the court for an order to discharge the attachment, and, if such order be granted, all the proceeds of sales and moneys collected by such officer and all property attached remaining in his hands shall be delivered or paid by him to the defendant or his agent and released from the attachment. And when there is more than one defendant and the several property of either of the defendants has been seized by virtue of the order of attachment any defendant whose several property has been seized may apply to the officer who issued the attachment for relief under this section.

11. See Bates, Reed and Cooley v. Killian & Bros., 17 S.C. 553 (1882).

of the defendant and to furnish security for the satisfaction of any judgment that may be rendered.[12]

A comprehensive statutory attachment plan is provided under Chapter 10 of the South Carolina Code of Laws. In brief, and as pertinent here, an attachment of a defendant's property is permitted in any civil action when money damages are sought in the complaint against a non-resident defendant who has removed or is about to remove any of his property from this state with intent to defraud his creditors. A plaintiff is required to file an affidavit setting forth the grounds of the attachment and to post a bond. The Writ of Attachment is executed by the Clerk of Court and directed to the local sheriff or marshal. No advance notice to the opposing party is necessary, and no court hearing or order is required. The attachment is made by the sheriff or marshal. The officer making the attachment must then make personal service upon the defendant of copies of the Writ of Attachment within ten days unless the defendant is served with a copy of the summons at the time the property is attached. A defendant has twenty days in which to answer or he may apply for an order to discharge the attachment and receive the attached property back upon posting a redelivery bond. Prior to the termination of litigation, attachment may be dissolved[13], or the property may be substituted for a bond with surety, § 10–931[14].

▇ The main thrust of the defendant's argument is that under the principles established in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1973) and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) prior notice and judicial hearings are prerequisites to prejudgment attachment. The court disagrees. Both the decisions in *Fuentes* and *Sniadach* are clearly distinguishable from those in the instant case. In *Fuentes* the appellants were purchasers of household goods under conditional sales contracts. The Supreme Court said in essence that common law replevin in its original form had been changed. Initially common law replevin was to obtain the possessions of "goods wrongfully taken". However, replevin as it appeared under the Statutes of Florida and Pennsylvania was for the return of goods "wrongfully detained" —not wrongfully taken. The Supreme Court said that replevin statutes "are most commonly used by creditors to seize goods allegedly wrongfully detained—not wrongfully taken—by debtors"[15]. The attachment proceeding in the instant case is not a replevin action and does not attempt to seize goods allegedly wrongfully detained by the debtor defendant. The action is to secure the assets of the debtor defendant to prevent him from removing them from the State of South Carolina when such move is with the intent to defraud his creditors. Additionally, as pointed out in the opinion, "if he [debtor] does not post such a bond, the property *is transferred* to the party who sought the writ" (emphasis added). In an attachment proceeding the property is in the hands of the court[16] and remains in the

---

12. See Sec. 10–901 et seq., Code of Laws of South Carolina, 1962, as amended.

13. See Sec. 10–932.1, S.C.Code, 1962, as amended.

14. See Sec. 10–931, S.C.Code, 1962, as amended.

15. 407 U.S. 67, at 79; 92 S.Ct., at 1993.

16. Sec. 10–927, S.C.Code, 1962, anno., provides: Duties of officer in case of seizure of property.—The sheriff or constable shall, immediately on making seizure under the provisions of § 10–923, with the assistance of two disinterested freeholders, make a just and true inventory of all the property so seized and of the books, vouchers and papers taken into custody, stating therein the estimated value of the several articles of personal property and enumerating such of them as are perishable. Such inventory, after being signed by the sheriff or constable and appraisers, shall within ten days after such seizure be returned to the officer who issued the warrant, and the sheriff or constable shall, under the direction of such officer, collect, receive and take into his possession all debts, credits and effects of such

possession of the court until the main issue of the case is decided. The statute guarantees that "the right to notice and an opportunity to be heard" is a part of the processing of the issue "at a meaningful time and in a meaningful manner".[17] Of course the attachment statutes do not, in themselves, assure the hearing, but the fact that the remedy is collateral or ancillary to the main suit guarantees the owner of the seized (secured) property due process of the main claim. The action to which the attachment is collateral or provisional, must be commenced in regular form before the remedy of attachment is available. Williamson v. Eastern Building Assn., 54 S.C. 582, 32 S.E. 765 (1899). If the main action fails, the provisional remedy falls with it. Skalowski v. Joe Fisher, Inc., 152 S.C. 108, 109 S.E. 340 (1929), Central Railroad & Banking Co. v. Georgia Construction Co., 32 S.C. 319, 11 S. E. 192 (1890). The attachment statutes of South Carolina meet the test of *Fuentes* in that a hearing "at a meaningful time" is guaranteed. The person whose property is seized (secured) has an opportunity to speak up in his own defense.

If a prior hearing were to be required before attachment could be employed, the entire purpose of the remedy would be defeated. The purpose is to preserve,

or secure, the property and the creditor does not take possession as in the case of claim and delivery. The owner of the property may make general or special [18] appearance, and apply to the officer who issued the attachment for discharge thereof, see 10–930, S.C.Code, 1962, anno.[19]. The owner is not deprived of his property; the impact is to place the state in temporary possession until the issues can be litigated. As was pointed out in *Fuentes*:

> We do not question the power of a State to seize goods before a final judgment in order to protect the security interest of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing. The nature and form of such prior hearings, moreover, are legitimately open to many potential variations . . . . [407 U.S. at 96, 92 S.Ct. at 2002, 32 L.Ed. 2d at 579]

The goods are not finally taken from the possession of the debtor until the court so decrees. The test of *Fuentes* is again met.

██ It is almost elementary that the effect of an attachment is to create a lien or encumbrance on the property attached. The American, 40 F.2d 942 (D.Mass.1930). The lien is perfected when the suit ends in a judgment for

debtor and commence such suits and take such legal proceedings, either in his own name or in the name of such debtor, as may be necessary for that purpose and prosecute and discontinue such suits and proceedings at such times and on such terms as the court may direct. The property so seized or the proceeds of such as shall have been sold and debts collected shall be kept to answer any judgment which may be obtained in such action.

17. 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 570, citing Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62, 66.

18. Able v. Hall, 101 S.C. 24, 85 S.E. 165 (1915).

19. Sec. 10–930 S.C.Code, 1962, Anno. provides: Discharge or return of property on defendant's appearance.—Whenever the de-

fendant shall have appeared in such action he may apply to the officer who issued the attachment or to the court for an order to discharge the attachment, and, if such order be granted, all the proceeds of sales and moneys collected by such officer and all property attached remaining in his hands shall be delivered or paid by him to the defendant or his agent and released from the attachment. And when there is more than one defendant and the several property of either of the defendants has been seized by virtue of the order of attachment any defendant whose several property has been seized may apply to the officer who issued the attachment for relief under this section. Sec. 10–932.1, S.C.Code, 1962, Anno. provides: Motion by owner to discharge attachment.—In all cases the defendant or any person who establishes a right to the property attached may move to discharge the attachment.

plaintiff and the property is used to satisfy that judgment [20]. It is not a fixed lien, and if, on final adjudication, no liability is adjudged against a defendant, there is no lien against the property. Thus, by its very nature it falls without the ambit of *Fuentes*. Whereas in claim and delivery (replevin) processes, such as were emasculated in *Fuentes*, a possessive property right was transferred from debtor to creditor by the seizure; in attachment the goods are strictly in the custody of the law, and the attaching creditor has no interest or property right in or right to possession of the attached goods, by reason of the levy [21]. The distinction is clear.

In *Sniadach* the Supreme Court had under consideration the prejudgment garnishment of wages that the Court pointed out "may impose tremendous hardship on wage earners with families to support" and "may as a practical matter drive a wage-earning family to the wall [22]." The Supreme Court went on to say that under these circumstances "where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing . . . this prejudgment garnishment procedure violates the fundamental principles of due process" [23].

No such prejudice is demonstrated in this case. As indicated above this is an attachment proceeding, not garnishment or replevin proceedings which deal with the seizure of an individual's wages or seizure of goods wrongfully detained by a debtor. Also, the plaintiff has reasonable protection under the South Carolina attachment laws, especially since there is not a claim that the attachment is excessive. Since the defendant has the right to post a redelivery bond immediately there is no deprivation of the use or enjoyment of the property pending a trial on the merits. The defendant does not claim that the attachment of the two cabooses threatens his livelihood.

The court is satisfied that the rationales in *Fuentes* and *Sniadach* were not intended to cover the attachment procedures such as those authorized under the South Carolina statutes.

The court is also satisfied that several cases dealing with attachment procedures are controlling on the present issue. For example, the court in Blackwatch Farms, Inc. v. Dick, 323 F.Supp. 100 (D.Conn.1971) held that notice or a hearing before prejudgment attachment of real property is not required; and that due process is satisfied by the subsequent plenary hearing in the main action. Further, the United States Supreme Court in McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929) upheld the constitutionality of Maine's real estate attachment laws. Attachment procedures were also upheld in Coffin Bros. & Co. v. Bennett, 277 U. S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928).

The attachment of the property in question is not a final proceeding nor does this court believe it is unduly harsh. Therefore, there is no necessity for a prior notice or hearing since due process is satisfied by the subsequent preliminary hearing in the main action. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir. 1968); Schillaci v. Olesen, 161 F.Supp. 227, 230 (S.D.Cal.1958).

Defendant's motion to vacate the Writ of Attachment is denied.

And it is so ordered.

20. See 7 C.J.S. Attachment § 254, p. 430.

21. 407 U.S. 67, 79, 92 S.Ct. 1983, 32 L.Ed.2d 556.

22. 395 U.S. at 340–342, 89 S.Ct. at 1822.

23. 395 U.S. at 342, 89 S.Ct. at 1823.